IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WILLIAM CHASE WOOD, et al.,<br><br>        Plaintiffs,<br><br><br><br><br><br>                vs.<br><br><br>WORLD WIDE ASSOCIATION OF<br>SPECIALTY PROGRAMS AND<br>SCHOOLS, INC., et al.,<br><br>        Defendants. | MEMORANDUM DECISION AND<br>ORDER AFFIRMING<br>MAGISTRATE JUDGE'S ORDER<br>DENYING MOTION FOR LEAVE<br>TO AMEND COMPLAINT AND<br>LIFTING STAY<br><br><br><br><br><br>Case No. 2:06-CV-708 TS |

## I. INTRODUCTION

Plaintiffs object[1] to the Magistrate Judge's September 18, 2007 Order[2] denying

Plaintiffs' Amended Motion for Leave to File Plaintiffs' Fourth Amended Complaint –

_____

[1] Docket No. 256.

[2] Docket No. 245.

1

Version 2[3] pursuant to Rule 72 of the Federal Rules of Civil Procedure.  The Magistrate

Judge denied the Amended Motion on the grounds that the Fourth Amended Complaint

– Version 2 failed to meet this Court's Order for a More Definite Statement.[4]

Plaintiffs object on the following grounds: they claim their Fourth Amended

Complaint – Version 2 complies with the four specific requirements set forth in the Order

for a More Definite Statement, and that the Fourth Amended Complaint – Version 2 also

addresses the other discrepancies with the previous Amended Complaints highlighted in

the Order for a More Definite Statement.  Defendants generally respond that the Fourth

Amended Complaint – Version 2 still does not make clear the causes of action each

Plaintiff is asserting against each Defendant, making it impossible for each Defendant to

frame a responsive pleading, that the Fourth Amended Complaint – Version 2 includes

causes of action previously dismissed by this Court, and that the Fourth Amended

Complaint – Version 2 otherwise does not meet the requirements of the Court's Order for

a More Definite Statement.[5]

---

[3] Docket No. 202.  Plaintiffs originally filed their Motion for Leave to File Plaintiffs' Fourth Amended Complaint at Docket No. 190.  After a round of briefing, Plaintiffs recognized several problems with their Fourth Amended Complaint and filed an Amended Motion for Leave to file what is actually their proposed fifth amended complaint, but they style it the Fourth Amended Complaint - Version 2.  To avoid confusion, the Court will refer to the document as styled by the parties: Fourth Amended Complaint - Version 2.

[4] Docket No. 170.

[5] The Defendants in this case individually filed their Responses to the Plaintiffs' Objection.  Defendant Teen Help, LLC filed its Response at Docket No. 257. Defendants World Wide Association of Specialty Programs and Schools, Ken Kay, and Robert Lichfield filed their Response at Docket No. 258.  Defendant Majestic Ranch

For the reasons contained herein, the Magistrate Judge's Order is affirmed in all respects.

## II.  STANDARD OF REVIEW

The parties disagree as to the standard of review that should apply in this appeal. The Defendants argue that because the Magistrate Judge's Order is non-dispositive, the standard of review this Court should apply is whether the magistrate judge's order was "clearly erroneous or contrary to law."[6]  The Plaintiffs argue that the standard of review to be applied in this case "depends on whether this Court finds that Magistrate Judge Alba denied Plaintiffs' motion to amend their pleadings based on grounds of futility, and thus will not allow Plaintiffs to further modify their Complaint."[7]  If the Magistrate Judge denied the motion because further amendment would be futile, the Plaintiffs argue that the order would be dispositive,[8] and this Court should make a de novo review of the motion to amend.[9]  Because the record establishes that it would be futile to grant leave for further amendment, making this order potentially dispositive, the Court's ruling is on a de novo review of the entire record.

---

filed its Response at Docket No 262.  Defendants Cross Creek Manor, LLC, Cross Creek Center for Boys, LLC, and Farnsworth filed their Response at Docket No. 264. Although each of the Defendants' Responses contains slightly different arguments tailored to their specific concerns, for organizational purposes, this Memorandum Decision and subsequent Order will consider the Responses collectively.

[6]  28 U.S.C. § 636(b)(1)(A).

[7]  Docket No. 259, at 4.

[8]  *Id.* (relying on *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 595 (7th Cir. 2006)).

[9]  *See* 28 U.S.C. § 636(b)(1)(B)-(C).

> Under a de novo review a court "should make an independent determination of the issues . . .; [it] is not to give any special weight to the [prior] determination. . . .  "The district judge is free to follow [a magistrate's recommendation] or wholly to ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew."[10]

III.  LACK OF COMPLIANCE WITH ORDER FOR A MORE DEFINITE STATEMENT

On April 30, 2007, this Court granted the Defendants' various Motions for a More Definite Statement.[11]  This Court ordered that:

> The more definite statement shall include, but is not limited to, the following: (1) identification by name of the Defendant(s) against whom a cause of action is brought; (2) a more specific time frame for the claims; (3) which schools or facilities each student is alleged to have attended, and when; and (4) specifics on how the Defendants are alleged to have acted in concert.[12]

The Plaintiffs have failed to meet the first element of the Court's prior order. Although the Plaintiffs have summarily listed the Defendants' names in the first numbered paragraph of each cause of action in the Fourth Amended Complaint – Version 2,  there is no way to tell which Plaintiff is asserting which cause of action against which Defendant. Similarly, although Student Plaintiffs list "schools they attended" as entities they bring their claims against, they also list "the entire WWASPS enterprise Defendants,"—defined as meaning all of the Defendants[13]—as entities they bring their claims against.  Attached as

---

[10] *Ocelot Oil Corp. v. Sparrow Industries,* 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. First City Nat. Bank,* 386 U.S. 361, 368 (1967) and *Mathews v. Weber,* 423 U.S. 261, 271 (1976)) (quotation marks omitted).

[11] Docket No. 170.

[12] *Id.* at 13.

[13] Fourth Amended Complaint - Version 2, at ¶ VI(A)(1).

Exhibit A to the Fourth Amended Complaint – Version 2 are claims tables identifying the various harms each Student Plaintiff alleges to have suffered, the name of each school/camp each Student Plaintiff attended, and each Student Plaintiff's dates of attendance.  At the beginning of each claims table is the following statement: "The defendants with whom this plaintiff had direct contact and thus sue as direct defendants, the nature and approximate time that contact and abuses complained of are as follows."[14] At the end of the claims tables is the following statement: "This Plaintiff sues all Defendants named in this suit under theories in the nature of concert of actions, as described in Plaintiffs' Fourth Amended Complaint - Version 2."[15]  These same two statements appear on each of the Parent Plaintiffs' claims tables contained in Exhibit B to the Fourth Amended Complaint - Verison 2.[16]

Within the proposed Complaint proper, there is a laundry list of claims brought by the various Plaintiffs against the Defendants named in the first and last paragraphs of each cause of action. The problem with the proposed Fourth Amended Complaint - Version 2,  is that there is no connection between the information listed in Exhibits A and B and the claims brought in the proposed Complaint proper.  There is no way for the Defendants to know which causes of action the information in each of the claims sheets is intended to prove.  Because of this, the proposed Complaint fails to identify by name

---

[14] 256-2 (sample student claim).

[15] *Id.*

[16] *See, e.g.,* Docket No. 256-3 (sample parent claim).

the Defendant(s) against whom each individual cause of action for each Plaintiff is asserted.

For example, in the Exhibit A filing for one of the Student Plaintiffs, the claims table indicates that the Plaintiff attended Casa By The Sea for approximately eight months. During that eight months, the claim form lists "contacts and abuses complained of" as "Emotional: isolated, witnessed abuse, verbally abused; Physical: molested by student staff, tortured," along with many other allegations.

There is no way to know from the proposed Fourth Amended Complaint - Version 2 whether this Plaintiff is asserting all of the causes of action listed in the proposed Complaint directly against Casa By The Sea, or only some of those causes of action. As such, it is impossible for Casa By The Sea to file a responsive pleading to the proposed Complaint, because it has no idea which causes of action this Plaintiff is asserting against it. The Order for a More Definite Statement clearly required the Plaintiffs to identify each individual Defendant for each individual cause of action asserted by each individual Plaintiff. This example from the Fourth Amended Complaint – Version 2, which is entirely typical of the remaining claims sheets, shows how the proposed Complaint fails to meet this Court's prior Order for a More Definite Statement.

Comparison of the Fourth Amended Complaint - Version 2 with other claims sheets further illustrates the lack of connection. The Fourth Amended Complaint - Version 2 specifically lists all Defendants by name in the Student Plaintiffs' claims for assault,

battery and false imprisonment[17] as well as by reference to the claims sheets.  However, all Student Plaintiff claims sheets do not list as an "abuse" any allegation that relates to these causes of action for each of the Defendants listed therein.  For example, in Student Plaintiff Coto's claims sheet, Cross Creek Manor is listed as a school attended.  However, there is no allegation of any abuse that could possibly form the basis of a claim for assault, battery, or false imprisonment.

The same lack of connection is true for the claims of the Parent Plaintiffs.[18]  Among other claims, the Parent Plaintiffs bring claims of fraudulent concealment[19] and actual and constructive fraud.[20]   But their claims sheets contain no specific information for the Defendants listed thereon about who, when, and how the alleged representations were made.[21]  Instead, almost all of the Parent Plaintiffs' claims sheets contain the nonspecific, vague, and general allegation that a person "had contact with," or "contact with," a person (named or unnamed) who worked for one of the Defendants, followed by variations on the following vague, conclusory, and nonspecific statement: "Methods of receiving the misrepresentations were: directed to an internet website, told over the telephone and

---

[17] Fourth Amended Complaint - Version 2, at ¶ VI(I)(1) and (2), (J)(1) and (2) and (K)(1) and (2).

[18] Attached as Ex. B to the Fourth Amended Complaint - Version 2.

[19] Fourth Amended Complaint - Version 2, at ¶ VI (C).

[20] *Id*. at ¶ VII (B).

[21] A statement that a person "had contact with," or "contact with" an individual is not an allegation that such person either made a statement or provided information.

7

received items by U.S. Mail or overnight delivery."[22]   Under "wrong complained of" there is the statement "Plaintiff was made the following promises [various promises such as safe environment, medical care, and the like] but those promises were not kept."[23]  The Fourth Amended Complaint - Version 2 incorporates nonspecifically all of the brochures, parent manuals, and advertising materials in the appendices and alleges they were "received by *certain* Parent Plaintiffs from *various* defendants [and] contain material misrepresentations that the Parent Plaintiffs relied upon to their detriment . . . ."[24]

The Fourth Amended Complaint - Version 2 alleges that the appendices contain all necessary information to allege fraudulent misrepresentation.[25]   Upon review, the Court finds the appendices do not contain the required information.   Instead, each document in the appendix is preceded by a list of "*example* excerpts of the content of misrepresentations made in the document by"[26] either a named Defendant or by the

---

[22]*E.g.*, Docket No. 256-2.

[23]*Id.*

[24] Fourth Amended Complaint - Version 2, at VII(B)(10) (emphasis added).

[25]*Id.* (alleging "[e]ach appendix identifies the Defendant who made the misrepresentations, the misrepresentations made to the Parent Plaintiffs in the document, the Parent Plaintiffs who received this particular document and relied upon it to their and their child's detriment, and the Parent Plaintiffs that remember thus far receiving a version of this document and relied upon it to their and their child's detriment").

[26] Docket No. 203-2, at 2.

nonspecific description "listed defendants,"[27] followed by a list of parents who allegedly either received the document, *or* received an unspecified version of it.

The manuals contained in the appendices have key differences.[28]  However, it is not possible to determine the specific manual each Parent Plaintiff alleges he or she relied upon for each of the "promises" they list in their claims forms.  Nowhere is the required information of the specific statement at issue for each Plaintiff and each Defendant, how it was made,[29] and who made each "promise" or who sent specific materials.

The claims sheet of Parent Plaintiff T. Woods is illustrative.[30]  It lists the following Defendants: Teens in Crisis, Cross Creek Admissions,[31] Cross Creek Center for Boys, and High Impact.  It lists the same vague, conclusory and nonspecific allegations of method of receiving alleged misrepresentations, quoted above, as the other claims sheets, as well as "handed [unspecified] materials to them again in person."  The claims

---

[27] Docket No. 211-2, at 2.  Although this document refers to "listed Defendants," it is the enrollment agreement of only Defendant Majestic Ranch.

[28] *Compare* Docket No. 209-2 ¶ 1(k) (summary of Casa By the Sea's parent manual's statement on physical restraint) *with id.* at 2-3 (summary of Spring Creek Lodge Academy's  parent orientation manuals not mentioning physical restraint) and 4 (listing Parent Plaintiffs who received a version of the attached manuals without differentiating whether they received a version of the manual discussing physical restraint).  *See also* Docket No. 217-2 (same).

[29] *E.g.*, by mail, internet, or orally conveyed during a telephone conversation.

[30] The claims sheet of Parent Plaintiff G. Wood is identical.

[31] Cross Creek Admissions is not a party herein. But it is described on the claims sheets as a "predecessor or successor compan[y]," or a "connected part[y] that may likely be named as an additional Defendant."

form appears to incorporate "promises"[32] listed under one Defendant in the columns for the other two defendants. The claims form is so nonspecific that each listed Defendant cannot discern whether the alleged promises/misrepresentations were made orally over the telephone by its own employee or by "contact with" an employee of another listed Defendant, or both. Nor can the listed Defendants discern what representations relate to them, and if they were made by internet website, received by email, or regular mail. There are three different dates of contact—one for each listed Defendant. But there is no information on what specific alleged misrepresentation was made on each those dates, by whom, or in what form.

Such generalized pleading of fraud is unacceptable. Each Defendant is entitled to know specifically what, if any, are the specific statements or materials allegedly made or provided by its own employee(s). If the Parent Plaintiff is relying on acts of another Defendant's employee as a basis for fraud liability against a second Defendant, that second Defendant is entitled to have those facts specifically alleged.

Perusing the Appendices, it appears that Parent Plaintiff Wood alleges she received an unspecified "version" of the following: the Teen Help Resource catalog that does not name either Cross Creek Center for Boys or High Impact;[33] an unspecified

---

[32] Merely alleging an unkept promise is not sufficient to state a claim for fraud or fraudulent misrepresentation. *See, e.g., Maack v. Resource Design & Const., Inc.*, 875 P.2d 570, 584 (Utah App. 1994) (holding that to "be liable for fraud, a defendant's misrepresentation must be of a presently existing fact," but also that it "is settled that a misrepresentation of a present promissory intention is a misrepresentation of a presently existing fact") (quotation omitted).

[33] Docket No. 203-2.

version of the High Impact/Cross Creek *Manor* Enrollment Agreement,[34] and an unspecified "version" of Cross Creek *Manor*'s Parent materials including a checklist, Enrollment Agreement and various forms.[35]  Plaintiffs do not link any specific "promise" listed on the Woods' claims sheets to a specific document in the appendices materials.

Plaintiffs argue that they have met the requirements for a more definite statement because they have also listed all Defendants in the last paragraphs of each cause of action "under a theory in the nature of concert of action."[36]  This reference to liability based upon concert of action refers to their claim that each Defendant is vicariously liable for all of the acts of every other Defendant under § 876(a) of the Restatement (Second) of Torts.[37]  Assuming, for purposes of this Motion only, that Utah law would apply to the issue and that Utah courts would apply the doctrine,[38] Plaintiffs have failed to include sufficient "specifics on how the Defendants are alleged to have acted in concert" as required by the Court's Order granting the motion for a more definite statement for the following reasons.[39]

---

[34] Docket No. 213-2.

[35] Docket No. 219-2.

[36] *E.g.,* Docket No. 263, Plaintiffs' Reply at 5-6.

[37] Fourth Amended Complaint - Version 2, at ¶ VI(A)(1).

[38] In *D.D.Z. v. Molerway Freight Lines, Inc*., 880 P.2d 1, 4 (Utah Ct. App. 1994), the court noted in dicta that there were no allegations sufficient to establish the elements of a claim under clauses (a), (b), or (c) of § 876, but did not expressly adopt the cause of action.

[39] Docket No. 170, at 13.

First, a § 876 claim of vicarious liability must be based on an independent tort.[40]

Thus, all elements of an independent tort must first be alleged as to a specified actor.

Second, the particular Defendant's own wrongful conduct in relation to that particular tort

must also be alleged.  As explained in the commentary for § 876 (a):

> In order for the rule stated in Clause (a) to be applicable, it is essential that the conduct of the actor be in itself tortious.[41]
>
> The mere common plan, design or even express agreement is not enough for liability in itself, and there must be acts of a tortious character in carrying it into execution. When *both parties engage in the acts*, each becomes subject to liability for the acts of the other.[42]

Plaintiffs allege their concert of action claim had a two-fold common purpose and

design: (1) to obtain tuition by means of alleged misrepresentations made to Parent

Plaintiffs as listed on their claims sheets;[43] and (2) to conceal the abuses of the Student

Plaintiffs as listed on their claims sheets and through such concealment to allow the

abuses to continue."[44]   In support of their concert of action theory, Plaintiffs make the

following nonspecific, vague, and conclusory allegations: various Defendants are related

to the other Defendants, various Defendants had common management, control,

---

[40] *E.g., Bergman v. Holden*, 857 P.2d 217, 219 (Or. Ct. App. 1993) (holding that liability under § 876(a) requires that the acts committed both by defendant and by the other actors be independently tortious in character) (citing Restatement (Second) Torts § 876, comments a, b and d (1977)).

[41] Restatement (Second) Torts § 876, cmt. a, illus. c.

[42] *Id*. at cmt. c (emphasis added).

[43] Fourth Amended Complaint - Version 2, ¶ VI(A)(3).

[44] *Id*.

employees, common or related advertising, accounting, and/or mailing addresses; there were transfers of money between Defendants; there was common or joint control of the assignment of students and creation of schools; and unspecified Defendants created new entities for the purpose of concealing their concert of action.

However, there are no specific allegations of how the acts of each Defendant were independently tortious in character in relation to the common purpose and design. To meet the requirements of the Court's order for a more definite statement on the acting in concert theory of liability, it is not sufficient for Plaintiffs to allege in a general and conclusory manner that all Defendants acted in concert and Plaintiffs suffered various wrongs by one or more of the Defendants.  Instead, each Defendant's own act of a tortious character in carrying the common plan into execution must be alleged.  That is not accomplished by alleging—as the Parent Plaintiffs do—that "promises" "were made" to the Parent Plaintiff and "were not kept."[45]  As discussed above, it is not possible to discern from the claims sheets what each listed Defendant is alleged to have done.  Thus, there are no allegations of what specific and independent act of a tortious character each listed Defendant committed in furtherance of the alleged common design—to obtain tuition payments by misrepresentations.

To understand § 876(a) it is helpful to look at *Bergman v. Holden*.[46]  In *Bergman*, a defendant contractor hired to remove logs from property was sued for trespass under

---

[45] *Id.*

[46] 857 P.2d at 219.

a § 876 theory that he acted in concert with the trespassers who cut logs from property.
The *Bergman* Court explained:

> Even if defendant knew that some of the logs he transported came from
> plaintiff's property, that is insufficient to establish that he committed any tort.
> Likewise, that defendant happened to be related to other tortfeasors does
> not support an inference that defendant himself committed any tort.  Nor
> does the fact that defendant turned over the proceeds of the timber sale to
> those who hired him to haul the timber establish that defendant's conduct
> was tortious.[47]

Thus, in *Bergman*, because there was no evidence that the acts committed both
by the defendant contractor and the other defendant were independently tortious in
character, no liability under a § 876(a) concert of action theory was established.[48]
Likewise, in the present case, the allegations that Defendants happened to be related to
other defendants, knew their students were referred to or from those other Defendants,
or turned over a portion of the tuition to other Defendants, do not establish specific acts
committed by both a specific Defendant and by another defendant that were
independently tortious in character in carrying the alleged common purpose and design
into execution.  For these reasons, the Fourth Amended Complaint - Version 2, and
attachments are together insufficient to show how the independent tortious acts of two
specific Defendants acted in concert to misrepresent facts to specific Parent Plaintiffs and
thereby obtain payments.

---

[47] *Id.*

[48] *Id.*

The same deficiencies exist for the § 876 claim based on the Student Plaintiffs' claims sheets.  The Fourth Amended Complaint - Version 2 and its attachments do not allege specifically as to each Defendant how there were specific acts of tortious character in carrying the alleged common plan—to conceal abuse—into execution; *and* that two specific Defendants each engaged in one of the specified acts.  Neither the Student Plaintiffs' claims sheets nor the Parent Plaintiffs' claims sheets allege that any specific Defendant committed any act to conceal the abuses of the Student Plaintiffs—the alleged common design.

The Fourth Amended Complaint - Version 2 does allege general, nonspecific, and conclusory allegations of concealing the "true structure of this single business enterprise,"[49] of unspecified "owners and shareholders" of unspecified Defendants meeting with officials to try to keep facilities open or reopen a new facility when investigated for abuse,[50] of unspecified Defendants refusing to investigate suspected abuse,[51] refusing to disclose or warn of suspected abuse,[52] or to promulgate effective policies regarding teachers, supervisors and staff.[53]  All of these general, nonspecific, and vague allegations together do not provide enough information for Defendants to form an

---

[49] Fourth Amended Complaint - Version 2, ¶ VI(A)(10).

[50] *Id*. at  ¶ VI(A)(6).

[51] *Id*. at  ¶ VI(C)(5). This allegation and the following two allegations are contained in the section on fraudulent concealment which the Court has found to be insufficient as stated above.

[52]*Id*.

[53]*Id*.

answer regarding their alleged liability under § 876.  Further, the last three vague and non-specific allegations appeared largely verbatim in the Third Amended Complaint,[54] and are not therefore responsive to the Court's direction that Plaintiffs provide "specifics on how the Defendants are alleged to have acted in concert."[55]

In sum, the Fourth Amended Complaint - Version 2 does not meet the requirements for a more definite statement of Plaintiffs' claims.  There are also other problems with the Fourth Amended Complaint - Version 2 as set forth in Defendants' responses to Plaintiffs' Objection.  But the Court need not address those deficiencies because it is dispositive that the Fourth Amended Complaint - Version 2, together with its attachments, does not meet the requirement for a more definite statement.  As a result, the Court finds that Defendants are seriously prejudiced in their ability to answer.

## IV.  CONCLUSION AND ORDER

Plaintiffs have had every opportunity to amend their complaint or to otherwise provide a more definite statement as required by the Court's Order.  They have failed to do so.  Accordingly, the Court will affirm the Magistrate Judge's denial of the Motion for Leave to Amend, deny further amendment, and proceed with the Motions to Dismiss that have been stayed pending determination on the Fourth Amended Complaint - Version 2.[56]

Based on the foregoing, it is therefore

---

[54] Docket No. 149-2 at ¶ VI(C)(4) and (5).

[55] Docket No. 170, Order Granting Motion for More Definite Statement, at 13.

[56] Docket No. 252 (Magistrate Judge's Order Granting Plaintiffs' Motion to Stay).

ORDERED that Plaintiffs' Objection to the Magistrate Judge's Order Denying Leave to Amend (Docket No. 245) is OVERRULED.  It is further

ORDERED that the Magistrate Judge's September 18, 2007 Order Denying Leave to Amend is AFFIRMED IN ALL RESPECTS and Plaintiff's Amended Motion for Leave to File Fourth Amended Complaint - Version 2, (Docket No. 202) is DENIED.   It is further

ORDERED that the stay is lifted.  Plaintiffs shall have until 20 days from the entry of this Order to file their responses to the Motions to Dismiss (Docket Nos. 243 and 248). Replies shall be filed in accordance with the local rule.  The Court will rule on the fully briefed Motions to Dismiss without argument.

DATED   August 25, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge