IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WILLIAM CHASE WOOD, et al.,<br><br>        Plaintiffs,<br><br><br><br><br><br>                    vs.<br><br><br><br>WORLD WIDE ASSOCIATION OF SPECIALTY PROGRAMS AND SCHOOLS, INC., et al.,<br><br>        Defendants. | MEMORANDUM DECISION AND ORDER GRANTING CAROLINA SPRING'S MOTION TO DISMISS FOR IMPROPER VENUE AND LACK OF PERSONAL JURISDICTION<br><br><br><br><br><br><br>Case No. 2:06-CV-708 TS |

## I.  INTRODUCTION

Defendant Carolina Springs Academy (Carolina Springs), is a South Carolina corporation that operates a residential boarding school (the school) located in South Carolina.  Two Student Plaintiffs and two Parent Plaintiffs bring claims against Carolina Springs based on events allegedly occurring during the students' attendance at the school. Carolina Springs moves to dismiss for improper venue and lack of personal jurisdiction. Plaintiffs argue the venue selection clause should not be enforced and that there is

personal jurisdiction.  The Court dismisses the Baker/Vaughn claims for improper venue and dismisses the Pink claims for lack of personal jurisdiction.

## II.  VENUE

Carolina Springs contends the claims must be dismissed because the forum selection clause in the Enrollment Agreements provides that all such claims may only be filed in South Carolina, where the school is located.  Student Plaintiffs Ryan Pink and Steven Baker attended the  school in South Carolina.  Ryan Pink and his mother, Parent Plaintiff Lana Pink, are residents of California.  Steven Baker and his mother, Parent Plaintiff Krystal Vaughan, are residents of California.  None have been residents of Utah.

A party may move a court to dismiss an action based on "improper venue."[1]  "A motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3)."[2]  Carolina Springs seeks only dismissal under Rule 12(b)(3), not transfer. Plaintiffs argue against dismissal but do not seek transfer.  Plaintiffs, as the parties challenging the enforceability of the forum selection clause, have the burden of showing it should not be enforced.[3]  If Plaintiffs seek

---

[1]Fed. R. Civ. P. 12(b)(3).

[2]*Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir. 1992).

[3]*Hugger-Mugger, L.L.C. v. Netsuite, Inc.*,  2005 WL 2206128, 3 (D. Utah September 12, 2005) (unpublished decision).

to avoid the choice of venue provision based upon fraud or overreaching they must show that the inclusion of "that clause in the contract was the product of fraud or coercion."[4]

The Enrollment Agreements for students at Carolina Springs provide that the sponsors—the students' legal guardians—"acknowledge that they have had the opportunity to have any of their questions answered by representatives" of Carolina Springs,[5] and also contain the following acknowledgments in the paragraph immediately above the signature lines:

> SCOPE AND MEANING OF AGREEMENT.  Sponsors hereby acknowledge that they have read the entire Enrollment Agreement and that they understand and agree to its provisions. . . .[6]

The Baker Enrollment Agreement was executed on June 28, 2001, and provides:

> 32.   CHOICE OF JURISDICTION, LAW AND OTHER MATTERS. SPONSORS AGREE TO BE SUBJECT TO JURISDICTION OF THE COURTS OF THE STATE OF SOUTH CAROLINA IN ANY DISPUTE BETWEEN THE PARTIES TO THIS AGREEMENT.  The parties agree that this Agreement constitutes a business transaction and services rendered within the state of South Carolina. Therefore, the parties agree that the state of South Carolina law shall govern this Agreement.  Moreover, the parties agree that all disputes and/or claims may only be filed in South Carolina and are under the jurisdiction of the courts of South Carolina. . . .[7]

The Pink Enrollment Agreement was executed on October 12, 1999, and provides:

> 31.   CHOICE OF JURISDICTION, LAW AND OTHER MATTERS. SPONSORS AGREE TO BE SUBJECT TO JURISDICTION OF THE

---

[4]*Riley*,  969 F.2d at 960 (enforcing foreign forum selection clause) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974)(same))

[5]Docket No. 184-2, at 7 and 18.

[6]*Id*. at 15 and 27.

[7]*Id*. at 13-14.

COURTS OF THE STATE OF SOUTH CAROLINA IN ANY DISPUTE BETWEEN THE PARTIES TO THIS AGREEMENT.  The parties agree that this Agreement constitutes a business transaction and services rendered within the state of South Carolina.  Moreover, the parties agree that the state of South Carolina law shall govern this Agreement. . . .[8]

Significantly, the Pink Enrollment Agreement does not contain the provision agreeing that all disputes and/or claims may only be filed in South Carolina.

The Enrollment Agreements provide they shall be governed by South Carolina law. Accordingly, the Court applies South Carolina substantive law to construe the terms of the Enrollment Agreements.[9]  "Forum selection provisions are 'prima facie valid' and a party resisting enforcement carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances."[10]

The Court finds that the Baker Enrollment Agreement's venue selection clause is mandatory.  Its language is clear and unambiguous.  Jurisdiction is specified and the designation is accompanied by "additional language indicating the parties intent to make venue exclusive."[11]  The Enrollment Agreement provides "all disputes and/or claims may

---

[8]*Id*. at 27.

[9]*Jones v. KP&H LLC*, 2008 WL 2805444, 3 (10th Cir. July 22, 2008) (unpublished case quoting *SBKC Serv. Corp. v. 1111 Prospect Partners, L.P.*, 105 F.3d 578, 581 (10th Cir. 1997)). The Court cites *Jones* for its persuasive value only.

[10]*Riley,* 969 F.2d at 957 (enforcing foreign forum selection clause and arbitration clause).

[11]*American Soda, LLP v. U.S. Filter Wastewater Group, Inc*., 428 F.3d 921 (10th Cir. 2005).

4

*only* be filed in South Carolina."[12]   In contrast, the Pink Enrollment Agreement's venue selection clause is permissive because it "refers only to jurisdiction, and does so in non-exclusive terms (*e.g.*, there is no use of the terms 'exclusive,' 'sole,' or '*only*')."[13]

Because the Baker Enrollment Agreement is clear and mandatory, it must be enforced unless "enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or overreaching."[14]   A plaintiff seeking to avoid a choice provision on the basis of fraud or overreaching must plead that the inclusion of that clause in the contract was the result of the alleged fraud or overreaching.[15]

Plaintiffs arguments[16] against the enforcement of the forum selection clause are as follows: there was overreaching because of unequal bargaining power and levels of sophistication; Steven Baker was a minor when it was executed; and, it would be prohibitively expensive for the Baker Defendants to separately bring their "concert of action" and other vicarious liability claims against only one Defendant in South Carolina when those same claims will be tried as to all 23 Defendants in this district.

---

[12]Docket No. 184-2 at 13-14 (emphasis added).

[13]*K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW"),* 314 F.3d 494, 500 (10th Cir. 2002) (emphasis added).

[14]*American Soda*, 428 F.3d at 927 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

[15]*Riley*, 969 F.2d at 960.

[16]Only Lana Pink avers that the clause was not explained to her.  Therefore, the argument that the clause was not explained to the parents does not apply to the Baker/Vaughn claims.

Plaintiffs contend that the inclusion of a release of a third party—the company that referred Baker to Carolina Springs—shows that Carolina Springs was more sophisticated than the parents.  In support they cite the release found at Addendum # 5 to the Pink Enrollment Agreement.[17]   The Baker Enrollment Agreement does not contain an Addendum # 5.  The Baker Enrollment Agreement does contain an acknowledgment that Carolina Springs has "sole responsibility for the performance of the contract" and a release of liability for any company that referred the parents to Carolina Springs.[18]

However, there is no information in the record regarding the circumstances of the execution of the Baker Enrollment Agreement, the part, if any, that the release played, or the actual sophistication of the signatories.  In the absence of any such information on the circumstances of the parties entering into the Baker Enrollment Agreement, the presence of a release of liability for a third party does not, by itself, show such a disparity in sophistication that the venue selection clause should not be enforced.

Plaintiffs also attempt to establish overreaching by arguing that there was unequal bargaining power because the parents were "desperate."  In support, they proffer the deposition testimony from another case in this district, a case not involving Carolina Springs.[19]  In that deposition, an individual named Irvin testified that when parents called the referral company she worked for to get information about placing their troubled teens in various schools or programs, that the parents were "everything from calm," to angry with

---

[17]Pls.' Mem. at 17 n.82.

[18]Docket No. 184-2, at 7, ¶ 2.

[19]*World Wide Association of Specialty Programs v. Pure, Inc.*, 2:02-CV-10 PGC.

their children, to "just devastated."[20]   However, this testimony is not linked to Baker or

Vaughn.[21]   Thus, like Plaintiffs' argument regarding relative sophistication, there is simply

no information in the record as to the actual bargaining power of the parties.

Plaintiffs also rely on the case *Marco Forwarding Co. v. Continental Casualty Co.*,[22]

in support of their argument that the Enrollment Agreement should not be enforced.   As

explained in the Ivy Ridge Order,[23] the *Marco Forwarding* court held that where there is

unequal bargaining power in form contracts: "Courts must determine 'whether the terms

of the clause [were] reasonably communicated to the consumer and are otherwise

fundamentally fair.'   Courts have developed a two-part test of reasonable

communicativeness, taking 'into account both the physical characteristics of the contract

itself, and also any extrinsic factors indicating the plaintiff's ability to become meaningfully

informed and to reject the contractual terms at stake.'"[24]

The Court finds that the clause at issue herein, like the one at issue in the Ivy Ridge

Order, is clear, prominently highlighted, and entirely communicative.   There is no evidence

as to extrinsic factors that would indicate that the Baker/Vaughn Plaintiffs lacked the ability

---

[20]Docket No. 186-6 at 2 (deposition of L. Irvin).

[21]For example, there is nothing on the actual sophistication of Baker's parents or the circumstances of their signing the Enrollment Agreement.

[22]430 F. Supp. 2d 1289 (S.D. Fla. 2005) (enforcing foreign forum selection clause in maritime case despite finding unequal bargaining power in form contract).

[23]Docket No. 277, Memorandum Decision and Order Granting Defendant Academy at Ivy Ridge's Motion to Dismiss for Improper Venue, at 5 (Ivy Ridge Order).

[24]*Marco Forwarding*, 430 F. Supp. 2d at 1294 (quoting *Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1259 (S.D. Fla. 2001)).

to become meaningfully informed and to reject the clause at issue.[25] Thus, even assuming unequal bargaining power, Plaintiffs have not shown under *Marco Forwarding* that the clause should not be enforced.

The Court further finds there is no showing that the forum selection clause is unreasonable or oppressive because it specifies a forum with a logical nexus to both the defendant school and the claims in this action.

The Court finds that there is no evidence of overreaching as to the Baker Enrollment Agreement.   Plaintiffs have not shown that the inclusion of the venue selection clause was the result of overweening bargaining power[26] or disparity in bargaining power.

Plaintiffs argue the clause is unenforceable as to Baker because he was a minor, but offer no case law in support of their position.  For the reasons stated in the Ivy Ridge Order,[27] based upon persuasive case law from other jurisdictions[28] the Court finds the forum selection clause is enforceable against the Student Plaintiff.

Plaintiffs also argue enforcement of the clause would be unreasonable because it would be too expensive and limit their ability to put on evidence if they had to separately

---

[25]Ivy Ridge Order, at 5, quoting *Marco Forwarding*, 430 F. Supp. 2d at 294 (further quotation omitted).

[26]*Compare Atlantic Floor Services, Inc. v. Wal-Mart Stores, Inc.*, 334 F. Supp. 2d 875, 878 (S.C. 2004) (enforcing forum selection clause and holding that under South Carolina law, "unequal  bargaining power is not a justification in and of itself to hold a provision of a contract invalid").

[27]Docket No. 277, at 6.

[28]*Morrow v. Norwegian Cruise Line Ltd.*, 262 F. Supp. 2d 474, 476 (M.D. Pa. 2002) (collecting cases enforcing forum selection clauses on cruise ship tickets).

bring their vicarious liability claims and the pattern and practice claims against only Carolina Springs in South Carolina. In support, Plaintiffs argue that because there is jurisdiction against all defendants in this jurisdiction it would be unreasonable and unjust to enforce the forum selection clause. However, the actual status of this case is that one Defendant has already been dismissed for lack of jurisdiction,[29] the claims against another Defendant have been transferred to another jurisdiction,[30] and the vicarious liability claims, including the concert of action claims, have been dismissed as to many Defendants.[31] Further, for the reasons stated below, the Court is dismissing the Pink claims against Carolina Springs for lack of personal jurisdiction.

There is also no actual information, as opposed to argument, that it would be so prohibitively expensive to bring their pattern and practice evidence in South Carolina that it would effectively deny Baker/Vaughn their day in court. As noted in a prior Order, where most of the vicarious liability claims have already been dismissed, there is no unfairness in requiring Plaintiffs to do what they agreed to do—litigate their claims against the school in the state where the student attended the school.[32]

---

[29]*See, e.g.*, Docket No. 254 (granting Spring Creek Lodge's Motion to Dismiss for lack of personal jurisdiction).

[30]Docket No. 277 (granting in part Ivy Ridge's Motion and transferring claims to New York).

[31]Docket No. 170 (dismissing claims of actual and constructive fraud, conspiracy and fraudulent concealment, fraud under Utah Deceptive Practices Act, RICO, violation of criminal statutes, and alter ego/vicarious liability as to seven defendants) and Docket No. 274 (affirming Magistrate Judge's Order Denying Motion to Amend and denying further amendment for the failure to comply with Order for More Definite Statement).

[32]Docket No. 277, at 7.

Plaintiffs also argue that the forum selection clause, if enforced, would deny them access to federal court because it refers to the state court rather than the federal court in South Carolina.[33]  Be that as it may, that is the venue agreement in the parties' contract and Plaintiffs have not shown it should not be enforced.

Finally, even if the Barker/Vaughn claims were not dismissed for improper venue, they would be dismissed for lack of personal jurisdiction over Carolina Springs for the reasons set forth below.

### III.  PERSONAL JURISDICTION

Carolina Springs moves to dismiss the claims against it for lack of personal jurisdiction.

> Where the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists.  However, in the preliminary stages of litigation, the plaintiff's burden is light.  Where a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion.  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." When evaluating the prima facie case, the court is bound to resolve all factual disputes in favor of the plaintiff in determining whether he has made the requisite showing.[34]

---

[33]Docket No. 187, Pls.' Response, at 17.  Unlike the situation with Ivy Ridge, there is no federal case law that the "courts of South Carolina" include the federal district court.  Therefore, transfer is not an issue.

[34]*AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056-57 (10th Cir. 2008) (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir.1998) (citations omitted)).

The Court has considered the affidavits and exhibits, resolved any actually disputed facts in favor of Plaintiffs, and makes the following findings regarding personal jurisdiction. Carolina Springs is a South Carolina corporation operating a boarding school that is located in South Carolina and is licensed and regulated by the South Carolina Department of Social Services. Carolina Springs is not authorized to do business in Utah and does not pay taxes to the state of Utah. It does not own or operate any school in Utah. It does not own or lease any real property in Utah and has no employees in Utah. Its bank accounts are located in South Carolina. None of its employees, corporate officers, directors or shareholders are located in Utah.

As discussed above, only two of the many Plaintiffs herein attended Carolina Springs' residential school. Neither of the Student Plaintiffs or their Parent Plaintiffs reside in Utah. All of the services provided by Carolina Springs to the Plaintiffs were provided in South Carolina. All of Carolina Springs' communications with the parents of Ryan Pink and Steven Baker occurred in South Carolina or occurred via email and/or telephone with Carolina Springs personnel located in South Carolina.

Carolina Springs operates a informational website. Its Internet Service Provider is not based in Utah. Although accessible to Utah residents, Carolina Springs' website is not targeted at people or organizations located in Utah. It is not possible to buy products or enroll a student via the website. It is possible to contact Carolina Springs from the website via email, or by using the email, phone, or mail contact information listed on the website.

Carolina Springs does not recruit students or employees in Utah.

11

The Pink and Baker Enrollment Agreements are titled "Carolina Springs Academy, LLC Enrollment Agreement."  At the top center of their first pages they display Carolina Springs' emblem.  To the left of the Carolina Springs emblems there are also emblems for Adolescent Services International ASI (ASI).  Other than the name in the ASI emblem, the only other mention of ASI in the Pink Enrollment Agreement is in an attached Addendum # 5.[35]   Addendum # 5 is captioned "Teen Help" and consists of the following acknowledgment: ASI "recommends adolescent services including schools . . . ASI does not own, control, manage nor direct any individuals or companies that provide these services."[36]  Addendum # 5 also states it releases ASI from any liability for recommending a school or other services it recommends to parents and is signed by Lana and Michael Pink.[37]

Lana Pink states that ASI sent her a letter saying it had arranged with Carolina Springs for a month of free tuition from Carolina Springs for anyone who referred someone to ASI as well as a business card for an ASI employee showing a Utah phone number and

---

[35]Pink Aff., Ex. 1, Docket No. 187-3, at 8.  The Baker Enrollment Agreement does not have the Addendum # 5.  Other than its name in the emblem, there is no mention at all of ASI in the Baker Enrollment Agreement, which does not have an Addendum # 5. The Baker Enrollment Agreement has a general release of liability for any referring entity, but does not mention any such entities by name.  Docket No. 184-2, at ¶ 2.

[36]*Id*. at 1.

[37]*Id.*

address.[38]  The letter from ASI also enclosed a page with directions to Carolina Springs.[39]

Lana Pink's affidavit states that the Enrollment Agreement attached to her Affidavit requests that information be sent to Carolina Springs at a La Verkin, Utah street address or at a Utah fax number and also that copies be sent to ASI at a St. George, Utah street address, and another Utah fax number.[40]   However, those statements are nowhere included in the copies of the Pink Enrollment Agreement attached to either the Pink Affidavit or the Davis Affidavit.[41]   Because the document attached to the Pink Affidavit does not contain those statements as Pink avers, those statements will not be considered for the purposes of considering whether she has established a prima facie case of personal jurisdiction because they could only create a sham issue of fact on personal jurisdiction. The other statements in the Pink affidavit are considered if they involve Carolina Springs.[42]

Over the years, Carolina Springs has used three different Utah companies for its billing services, including Defendant R & B Billing.  Carolina Springs has never had any ownership interest in any of the Utah billing companies it used.

Printed at the top of the invoices sent by R & B Billing to the parents of Ryan Pink in Texas as a result of his enrollment in the school is the following:

---

[38]*Id*. at ¶ 6, referencing documents at Docket No. 187-4 and -5.

[39]*Id*.

[40]Pink Aff. at ¶ 3.

[41]Davis Aff., Ex. 2 (Docket No. 184-2).

[42]Paragraph 10 of the Pink Affidavit involves a bill from Pink's son's enrollment in another Defendant's school.

Make Checks Payable to:

Carolina Springs Academy
P.O. Box XXXX
St. George, UT 84771

Voice: (435) 656-XXXX
Fax:    (435) 656-XXXX[43]

R & B Billing was located in Utah during the times in question.  As part of its invoicing and collections business R & B Billing sent the invoices to the Pinks and other parents of students enrolled at Carolina Springs.  R & B Billing placed Carolina Springs' name on the invoices as a means of identifying amounts collected on behalf of Carolina Springs, rather than its other clients.  The Utah post office box number listed was leased and controlled exclusively by R & B Billing.  Carolina Springs could not access the post office box.  The Utah telephone and fax numbers listed on the invoices were owned, controlled, and used exclusively by R & B Billing.  They were not connected in any way to Carolina Springs' employees.

R & B Billing placed the money it collected on behalf of Carolina Springs in a segregated bank account.  Carolina Springs did not own, control, or have the ability to access the bank account in any form.  R & B Billing regularly transmitted the money it collected for Carolina Springs to Carolina Springs via checks written by R & B and mailed to Carolina Springs in South Carolina.  The billing services are not at issue in this case.

Lana Pink made payments on some of the invoices by checks mailed to R & B Billing's Utah post office box.  She also submits two receipts for her payments of two of the

---

[43]Docket No. 187-3, at 9-13.

invoices by credit card.  These credit card receipts listing the name of the payee as Defendant Cross Creek Manor and show Cross Creek's address in La Verkin, Utah.[44]

Carolina Springs has subscribed to the services of two Utah companies for seminar services and for referral services.  It subscribes to Premier Educational Services for seminar presentations to its students and their parents around the country.  It subscribes to the referral services of Defendant World Wide Association of Specialty Programs and Schools  (World Wide).

Pink submits notices in World Wide's newsletter or magazine called the Source. The Source advertises support meetings, provides information on various programs, including Carolina Springs, and included a notice to parents that if they updated their addresses on World Wide's website that the updated information would be forwarded from World Wide to R & B Billing, the school, and others.[45]   Pink does not aver that she attended any of the advertised support group sessions or TASK sessions, none of which were held in Utah.

Plaintiffs' arguments for general and personal jurisdiction over Carolina Springs are nearly identical to their arguments regarding Spring Creek Lodge.  Accordingly, much of the Court's analysis was previously contained in the Order granting Spring Creek Lodge's Motion to Dismiss for lack of personal jurisdiction.[46]

---

[44]*See, e.g., id.* at 13.

[45]*Id.* at ¶ 8 and Docket 187-4 at 5-11.

[46]Docket No. 254 (Spring Creek Lodge Order).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[47]  Applying Utah law to the issue, the Court examines Plaintiffs' claims that there is general jurisdiction and specific jurisdiction.

As the Utah Supreme Court has stated, "[g]eneral personal jurisdiction permits a court to exercise power over a defendant without regard to the subject of the claim asserted. For such jurisdiction to exist, the defendant must be conducting substantial and continuous local activity in the forum state."

The Utah Court of Appeals recently observed that the following factors are relevant to the issue of whether general personal jurisdiction exists: Whether the corporate defendant is (1) engaged in business in this state; (2) licensed to do business in this state; (3) owning, leasing, or controlling property (real or personal) or assets in this state; (4) maintaining employees, offices, agents, or bank accounts in this state; (5) present in that shareholders reside in this state; (6) maintaining phone or fax listings within this state; (7) advertising or soliciting business in this state; (8) traveling to this state by way of salespersons, etc.; (9) paying taxes in this state; (10) visiting potential customers in this state; (11) recruiting employees in the state; (12) generating a substantial percentage of its national sales through revenue generated from in-state customers.[48]

Of these factors, the Court finds that only numbers four (maintaining agents in the state) and seven (advertising or soliciting business in the state) are even arguable.

---

[47]*Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995).

[48]*Soma Medical Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1295-96 (10th Cir. 1999) (quoting *Arguello v. Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992) and *Buddensick v. Stateline Hotel, Inc.*, 972 P.2d 928, 930-31 (Ut. Ct. App. 1998)).

Plaintiffs argue that Defendant maintains billing and marketing agents in Utah. Having a contract for billing services with a company that happens to be located in Utah but that does not bill Utah residents on its behalf or bill for services rendered in Utah is not sufficient to establish general personal jurisdiction in Utah.  Similarly contracting with a Utah company to provide marketing or referrals is not grounds for general personal jurisdiction where there is no information that Carolina Springs picked Word Wide, ASI, R & B Billing, or any of the billing agencies it used, because of their Utah residence or that their Utah residence played any part in their role as marketing or billing companies.[49]

Pink submits a print out from World Wide's website, directing persons to obtain enrollment information on various schools and programs, including Carolina Springs, by calling listed telephone numbers for ASI or two other companies.  There are also links directly to the websites for each school or program.

However, having a "'passive Web site that does little more than make information available to those who are interested' and one in which [Carolina Springs] 'has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions,'" is not sufficient to establish general personal jurisdiction.[50]  This is even more true where the passive World Wide website is not even maintained by Carolina

---

[49]*Far West Capital,*  46 F.3d at 1076 (holding that retention of professionals for consulting does not establish minimum contacts with the consultant's home forum).

[50]*Soma Medical,* 196 F.3d at 1297 (applying Utah law and quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997)); *accord Fenn v. Mleads Enterprises, Inc.*, 137 P.3d 706 (Utah 2006) (holding that a passive website merely posting information accessible to users in foreign jurisdiction is not basis for personal jurisdiction).

Springs.  As noted above, there is no allegation that the Pinks attended any of the seminars or support group meetings advertised on the materials submitted by Plaintiffs. There is no allegation that any of the advertising or marketing of Carolina Springs by the Utah companies was directed to Utah residents, solicited Utah students, or offered services in Utah.

Plaintiffs also submit the results of the Internet searches attached to the Drake Affidavit.[51] These do not show that Carolina Springs has an office, owns property, or has a phone number in Utah. The search results show information on ASI and its connections to some other Defendants.[52]  But Plaintiffs do not explain how this information is relevant to the question of personal jurisdiction over Carolina Springs.

The Court finds that Plaintiffs have failed to make a prima facie showing of such general personal jurisdiction over Carolina Springs.

Plaintiffs also contend that there is specific personal jurisdiction over Carolina Springs.

> The evaluation of specific jurisdiction in Utah mandates a three-part inquiry: '(1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute; (2) a 'nexus' must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirements of federal due process.'[53]

---

[51]Docket No. 187-5.

[52]*E.g., id.* at ¶ 3-5 (ASI's connection to Defendants Teen Help and Lichfield).

[53]*Soma Medical*, 196 F.3d at 1297 (quoting *Nat'l Petroleum Mkt'g, Inc. v. Phoenix Fuel Co.*, 902 F.Supp. 1459, 1465 (D. Utah 1995)).

Courts may address the due process analysis first because "any set of circumstances that satisfies due process will also satisfy the long-arm statue."[54]   As explained in *Soma Medical*:

> [A] "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state."
>
> The "minimum contacts" necessary for specific personal jurisdiction are established "'if the defendant has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities."  If the defendant's activities create sufficient minimum contacts, we then consider "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice."
>
> We therefore examine the quantity and quality of [Defendant's] contacts with Utah, including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," to determine whether the exercise of personal jurisdiction over [Defendant] comports with due process.[55]

Plaintiffs contend that Carolina Springs transacts business in Utah because it promoted, advertised, marketed, billed, and collected through its agents, and banks in Utah.  However, as stated above, Plaintiffs have not made a prima facie showing that there are Carolina Springs bank accounts in Utah or that it advertised in Utah other than being listed on a passive informational website maintained by another company.

---

[54]*Id*. (quoting *SII MegaDiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998)).

[55]*Id*. (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980); *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998); and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

As to the billing by R & B Billing as Spring Creek Lodge's agent, such billing lacks any nexus to the alleged injuries, all of which are alleged to have occurred in South Carolina. Plaintiffs contend that they have shown that the claims arise out of the billing and marketing activity in Utah because there was fraud in marketing the schools by one or more Defendant. However, as noted above, the Court has previously determined that Plaintiffs' claims for fraud and that various defendants acted as a single entity, and its vicarious liability (including concert of action claims) were not adequately stated and further amendment has been denied for the failure to comply with the Order for More Definite Statement. Further, there is no showing by any of the Plaintiffs that there was any failure to disclose material information during a communication by or on behalf of Carolina Springs from Utah.

The Court finds that Plaintiffs have not shown that Carolina Springs has sufficient contacts with this forum to make the exercise of jurisdiction over this Defendant comport with traditional notions of fair play and substantial justice. This is especially true where neither Carolina Springs nor the Carolina Springs Plaintiffs resided in Utah at any time and where all of the alleged acts that underlay all of Plaintiffs' claims against this Defendant allegedly occurred at its school in South Carolina. Plaintiffs have failed to meet their burden of making a prima facie showing of specific personal jurisdiction over Carolina Springs.

## IV.   ORDER

For the foregoing reasons, it is therefore

ORDERED that Carolina Springs Academy's Motion to Dismiss for Improper Venue (Docket No. 183) is GRANTED as to Plaintiffs Steven Baker and Krystal Vaughn.  It is further

ORDERED that Carolina Springs Academy's Motion to Dismiss for lack of personal jurisdiction (Docket No. 183) is GRANTED as to Plaintiffs Ryan Pink and Lana Pink.

DATED September 16, 2008.

BY THE COURT:

_____

TED STEWART
United States District Judge

21