IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WILLIAM CHASE WOOD, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>WORLD WIDE ASSOCIATION OF SPECIALTY PROGRAMS AND SCHOOLS, INC., et al.,<br><br>    Defendants. | ORDER and<br>MEMORANDUM DECISION<br><br><br><br><br>Case No. 2:06-CV-708 CW |

    The present action is complicated; there can be no question about that, and the allegations, if true, involve serious misconduct that deserves to be addressed. The issue raised by these motions, however, is whether the Plaintiffs have selected the right judicial forum in which to seek redress. The court concludes that they have not and the complaint must be dismissed.

    The Plaintiffs are 350 parents and children who bring this action against about 60 Defendants. The Plaintiffs have made repeated attempts to successfully plead a federal cause of action and the present operative complaint, entitled the "Sixth Amended Complaint," is nearly 3,000 pages long. The Plaintiffs filed this action filed nearly five years ago and have faced a barrage of motions, to which they have responded by adding an ever changing and growing number of parties and asserting shifting legal theories and arguments. The court granted Plaintiffs the opportunity for yet another amendment, but clearly warned the Plaintiffs that the

Sixth Amended Complaint would be their last opportunity to state a viable federal claim. The Plaintiffs have failed and this Order is the end of the line for this case in this court.

As a brief factual background, the Defendants are individuals, corporate entities, and schools that were generally in the business of providing services to troubled teens and/or support services to each other. Generally, the Plaintiffs' claims are based on the proposition that the Defendants engaged in a scheme to bait and switch the unsuspecting Plaintiffs by convincing desperate parents of troubled youths to send their children to what were represented to be educational facilities specializing in improving the students' behavior. To avail themselves of this supposed behavior modifying education, the parents were required to pay large up-front and monthly costs for preliminary services and tuition. The Plaintiffs allege, however, that the services were a sham and the supposed schools were essentially gulags staffed by abusive and incompetent people. The Plaintiffs allege the students were subjected to horrific treatment which the Defendants covered up by feeding the parents continuous lies about the true nature of what was happening to their children. The Plaintiffs further contend that although government authorities would occasionally discover the true nature of a school and close that school, the Defendants would simply open new schools or shift students to already existing schools that had escaped shut down. The Plaintiffs allege that the Defendants' efforts to conceal the scheme included paying hush money to critics and the media and filing bogus claims against parents who complained or brought actions against them. The Plaintiffs maintain that the Defendants financed the scheme by skimming off service fees and tuition, which ensured that the schools that were meant to receive that money were not be properly funded. The Plaintiffs allege that the scheme operated between 1995 and 2007, with wrongful activities beginning as early as 1994.

The Plaintiffs assert a variety of causes of action arising from the alleged wrongful conduct and have divided themselves into "Parent Plaintiffs" and "Student Plaintiffs." The Parent Plaintiffs assert state law claims mostly related to their claims that the Defendants defrauded them by convincing them to send their children to the relevant schools and the alleged continuing fraud perpetuated to keep the children there. The Student Plaintiffs assert state law intentional tort claims mostly related to their allegedly abusive and inhumane treatment at the schools. The Plaintiffs assert federal court jurisdiction in the first instance based on their attempt to plead a claim under the Racketeer Influenced and Corrupt Organizations Act of 1984, 18 U.S.C. § 1961 *et seq*. All Plaintiffs attempt to plead the RICO claims against all Defendants. As a secondary position, the Plaintiffs claim that they can meet the requirements for diversity jurisdiction by dismissing claims of the non-diverse parents and children.

On the Plaintiffs' motion, the court designated this action as complex. As its initial ruling on complex procedure, the court ordered that before it could decide the multiple outstanding motions by various Defendants to dismiss on various grounds, it must first determine whether it has original jurisdiction in this action and requested briefing on this issue. The Defendants responded by filing a joint motion to dismiss, arguing that the Plaintiffs have failed to state a viable RICO claim and that diversity is not present. The Plaintiffs argued for original federal jurisdiction based on their RICO claims and argued that in any event they should be allowed to amend the complaint to satisfy the diversity requirements. For the reasons stated below, the court GRANTS the Defendants' motion to dismiss the RICO claim. Moreover, the court concludes that it does not have diversity jurisdiction. Finally, the court will not entertain any further motions to amend the complaint. Accordingly, this action is DISMISSED in its

entirety for lack of subject matter jurisdiction.

## ANALYSIS

I.   **RICO Claims**

The Plaintiffs allege that the Defendants have violated subsections (a), (b), (c) and (d) of 18 U.S.C. § 1962. The Defendants argue that the complaint fails to state a claim for any of these causes of action. The court agrees with the Defendants. Because the Plaintiffs have not stated a valid RICO claim under any of these sections, the court does not have federal question jurisdiction in this action.

   A.   **Legal Standard**

When considering a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded factual allegations. *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002). Courts must also view all facts alleged in the light most favorable to Plaintiffs as the nonmoving parties. *Id.* Nevertheless, the court "need not accept . . . conclusory allegations without supporting factual averments." *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). Court must, however, keep in mind that is "function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

To survive a motion to dismiss for failure to state a claim, a plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Cohon ex rel. Bass v. New Mexico*, __ F.3d __ , 2011 WL 1746203, * 5 (10th Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The *Twombly* Court further elaborated that to do so,

plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible" *Twombly*, 550 U.S. at 547. The application of this pleading requirement to all civil cases was affirmed in *Ashcroft v. Iqbal,* 556 U.S. ___, 129 S.Ct. 1937 (2009).

> **B.     Claims Under Section 1962(a)**

The Plaintiffs have generally asserted that all Defendants have violated Section 1962(a). Section 1962(a), however, prohibits only "principals" from using or investing income from racketeering activity in the acquisition, establishment or operation of any enterprise affecting interstate commerce. 18 U.S.C. § 1962(a). In the Sixth Amended Complaint, the Plaintiffs name only Defendants Robert B. Lichfield, Patricia E. Lichfield and Brent M. Facer as principals. As plead, the court must assume that notwithstanding the generalized and conclusory allegations attempting to include all Defendants, the Plaintiffs' Section 1962(a) count is limited to claims against the Litchfields and Mr. Facer.[1]

To show standing to bring a RICO claim under Section 1962(a), a plaintiff "must plead facts tending to show that he was injured by the use or investment of racketeering income." *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1149 (10th Cir. 1989). In particular, the injury sustained by a plaintiff must have been "proximately caused by the RICO violation." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (citations omitted). As recently explained by the Supreme Court, "proximate cause [for RICO purposes] requires 'some direct relation between the injury asserted and the injurious conduct alleged. A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Hemi Group, LLC v. City of New York, N.Y.*, 130 S.

---

[1] In any event, as made clear below, the question of who the principals are is not dispositive of this claim.

Ct. 983, 989 (2010) (citation omitted).

The Defendants argue that the Plaintiffs have not plead that the principal Defendants' prohibited use or investment of racketeering income caused them harm. The Defendants acknowledge that the Plaintiffs allege that the principals invested proceeds from their activities into schools and related entities that formed the alleged enterprise, but argue that the court must disregard such allegations because the allegations of harm are merely conclusory and formulaic. They argue that the Plaintiffs fail to plead any facts to support these conclusory allegations.

The Plaintiffs respond that their complaint adequately demonstrates that the principals' unlawful use and investment lead to the harms the Plaintiffs suffered. Generally, the Plaintiffs argue that without the investments made by the principals, the Defendants would not have been able to engage in tactics necessary to cover up the scheme, such as opening new schools and forming new entities when the old ones were shut down. Without such investments, the Plaintiffs argue, they would not have made further payments or would not have suffered further harms. Thus, the Plaintiffs maintain, the principals' unlawful use or investment of income made it possible for the Plaintiffs to be defrauded and otherwise damaged.

On this issue, the Defendants prevail. Based on the allegations of the complaint, the court could infer that some of the Plaintiffs may have suffered injuries proximately caused by the fact that the Litchfields and Mr. Facer used or invested alleged racketeering income in a manner prohibited by Section 1962(a). The analysis, however, does not stop there. Because the Plaintiffs have not plead as a class, each separate Plaintiff must plead facts that plausibly support the conclusion that he or she in particular was harmed by the principals' prohibited use or investment of income.

The Plaintiffs do not plead facts to support such a conclusion. While it is conceivable that some Plaintiffs could have suffered harm proximately caused by principals' allegedly unlawful use or investment of income, none of the Plaintiffs has attempted to allege or argue how he or she in particular was so harmed. Rather, the Plaintiffs plead harm only in a global and general sense and argue harm as to all Plaintiffs in their memorandum in opposition to the motion to dismiss.

This conclusory pleading and overly generalized argument do not suffice. The Plaintiffs must allege facts that would support at least a reasonable inference to support the jump from the general proposition that Defendants' wrongful use and investment could have caused harm in an overall sense to the more specific conclusion that such activities plausibly were the proximate cause of harm to each Plaintiff. The factual allegations in the complaint, however, offer no plausible support for such a leap. The complaint includes claims by hundreds of Plaintiffs who allege harm by dozens of Defendants in a time period spanning over a decade. A theory of proximate cause could conceivably be formed for any given Plaintiff. Instead of offering such a theory, however, the Plaintiffs rely on conclusory pleading of harm related to general aspects of the overall scheme. In light of the requirement that a plaintiff plead facts sufficient to support an articulated proximate harm, these allegations are insufficient for the court to conclude that any Plaintiff has standing under Section 1962(a).

Because none of the Plaintiffs has alleged facts that plausibly support a conclusion that he or she was proximately harmed by activities prohibited by Section 1962(a), that claim fails for all of the Plaintiffs.

### C. Claims Under Section 1962(b)

"[I]n order to allege injury 'by reason of' section 1962(b), a RICO plaintiff must demonstrate that the defendants' acquisition or control of an interstate enterprise injured the plaintiff." *Midwest Grinding Co., Inc. v. Spitz*, 716 F. Supp. 1087, 1091 (N.D. Ill. 1989) (*aff'd*, 976 F.2d 1016 (7th Cir. 1992)). *See also Bixler*, 596 F.3d at 756 ("A plaintiff has standing only if his injuries were proximately caused by the RICO violation.") (citation omitted).

In the Sixth Amended Complaint, the Plaintiffs may have successfully alleged that some of the Defendants acquired an interest in or control of an enterprise. Even assuming that this requirement is met, however, the Plaintiffs' claim under Section 1962(b) fails for two reasons. First, the Plaintiffs fail to allege facts showing how such acquisition or control itself could plausibly have harmed any of them. Moreover, as with the Section 1962(a) claim, even if it were conceivable that the relevant acquisition and control could have harmed some or even many of Plaintiffs, none of the Plaintiffs have alleged how he or she in particular was harmed. Nor is there any trustworthy way for a fact finder to make the leap from general, potential harm to actual, particularized harm. For these reasons, the Plaintiffs have failed to plead facts sufficient for the court to conclude that they have standing to make their claim under Section 1962(b).

### D. Claims Under Section 1962(c)

To plead a claim under Section 1962(c), a plaintiff must allege that a defendant (1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006). The Defendants argue that the Plaintiffs

have failed on each of these four requirements.[2] The court need not address each element in this case, however, because the Plaintiffs have failed to properly plead an enterprise that is separate and distinct from the Defendants.

As explained by the Tenth Circuit in *Brannon v. Boatmen's First Nat'l Bank of Ok.,* 153 F.3d 1144, 1146 (10th Cir. 1998) (citations omitted), "the defendant 'person' must be an entity distinct from the alleged 'enterprise.'" While this distinction might appear to be somewhat technical, it is actually critical, because RICO liability "depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).

In the Sixth Amended Complaint, the Plaintiffs allege that the RICO claims are asserted against "all named Defendants." (Sixth Am. Compl. at VII.2, Dkt. No. 408 at p. 74.) The Plaintiffs further allege that the "enterprise" for purposes of the RICO claims is the "WWASPS Enterprise." (*Id.* at VII.6, p. 76.) Finally, the Plaintiffs define the "WWASPS Enterprise" as "the Defendants named herein, acting jointly to accomplish their common objective, as described in this Complaint." (*Id.* at IV.2, p. 53.) Simply put, the Plaintiffs have not plead facts sufficient to distinguish between the RICO "persons" and the RICO "enterprise." To the contrary, the complaint clearly asserts that the "persons" and the "enterprise" are one and the same: both are made up of all of the Defendants. There are not facts to support even an inference that the joint actions of the Defendants were carried out through a separate and distinct entity that could constitute a RICO enterprise. Under *Brannon* and *Reves*, such allegations do not plead an

---

[2] The Defendants also argue that the alleged harms to the student Plaintiffs cannot be recovered under RICO. The court need not reach this issue.

"enterprise" under Section 1962(c). Accordingly, the plaintiffs have failed to plead such a claim.

E. **Claims Under Section 1962(d)**

Finally, as explained by the Tenth Circuit, "[i]f a plaintiff has no viable claim under § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law." *Tal*, 453 F.3d at 1270. Here, as explained above, the Plaintiffs have not shown that they have standing under Section 1962(a) and (b) and not sufficiently plead an enterprise under Section 1962(c). Accordingly, their Section 1962(d) claim fails.

II. **Diversity Jurisdiction**

In the Sixth Amended Complaint, the Plaintiffs attempt a highly unusual approach to claim diversity jurisdiction. The Plaintiffs concede that there is no diversity jurisdiction on the face of the complaint and assert federal question jurisdiction. They continue, however, that if the RICO claims are dismissed, thirteen clearly non-diverse Plaintiffs "shall be voluntarily dismissed without prejudice from the case, so that complete diversity may be preserved." (Sixth Am. Compl. at II.3, Dkt. No. 408 at p. 51.)[3] The Plaintiffs further state that if the RICO claims are dismissed, they will also dismiss several clearly non-diverse Defendants who were previously dismissed from this action for lack of personal jurisdiction over them.

It is true that Rule 21 of the Federal Rules of Civil Procedure "'invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time [to preserve diversity

---

[3] Like the Defendants, the court is concerned that counsel's suggesting this course of action could be a breach of counsel's ethical duties to the Plaintiffs. Ultimately, however, the core issue for this court to decide is whether the proposed dropping of parties will be allowed and the question of attorney ethics is tangential to that question. In any event, there are other, more appropriate forums for deciding whether the Plaintiffs' attorneys have lived up to their professional duties in this case.

jurisdiction], even after judgment has been rendered.'" *Lenon v. St. Paul Mercury Ins. Co.*, 136 F.3d 1365, 1371 (10th Cir. 1998) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989), citations omitted). Nevertheless, whether the court should allow a party to be dropped to preserve diversity is left to the discretion of the court. *See Lenon*, 136 F.3d at 1369.

In this case, the court declines to exercise its discretionary power to allow the non-diverse parties to be voluntarily dismissed to preserve jurisdiction. First, and critically, the Plaintiffs have made no attempt to argue why the non-diverse parties are dispensable. While the court could envision arguments both in favor and in opposition to allowing some plaintiffs to be dismissed, it is not the court's responsibility to speculate as to whether those parties are dispensable or not.

Moreover, the practical effect of allowing the Plaintiffs' attempt at forum shopping is to create a single action which involves the disparate claims of hundreds of Plaintiffs against dozens of Defendants. This case has not been certified as a class action and there is no indication that Plaintiffs intend to seek such certification. It is therefore probable that even if there were complete diversity of citizenship among the parties, this action would eventually be severed into various actions and possibly even one action per Plaintiff. By requiring the Plaintiffs to try again together elsewhere or bring their claims separately, the court is simply speeding up the seemingly inevitable division of this action and more quickly bringing the Plaintiffs' claims to resolution.

Further, even if the court were inclined to allow the clearly non-diverse parties to be dropped, the citizenship of all the remaining parties is still not entirely clear. The Plaintiffs assert that every party's citizenship can be established by reference to the Sixth Amended Complaint and to the supplemental exhibits attached to their briefing. The court cannot definitively confirm

this assertion.

The main problem in this regard is determining the citizenship of the Defendants who are limited liability companies, partnerships, and other non-incorporated entities. The Plaintiffs maintain that they have named and alleged the citizenship of all known partners and members of such Defendants. But by the wording of this statement, the Plaintiffs essentially concede that they are not sure if there are other partners and members of the relevant Defendants. Defendant Sky View Academy is the most glaring example of why having complete citizenship information is crucial here. For Sky View Academy, the Plaintiffs state that rather than allege the citizenship of any member, they have alleged the citizenship of "the only officer provided by the Nevada Secretary of State." (Pls.' Memo. in Opp. at p. 28, n. 102, Dkt. No. 477 at p. 38.) For this Defendant, then, the court has no way of knowing whether any member is non-diverse, since the officer may or may not be a member. Beyond Plaintiffs' general assertions that they have researched various sources for information about members and partners, they do not assert that their allegations with respect to these kinds of Defendants are necessarily complete.

The Plaintiffs' proposed solution to this problem is to wait for possible future non-diverse partners or members to come forward and raise jurisdictional challenges at some point in the future. This approach is unacceptable because subject matter jurisdiction may be raised at any time. As such, years of effort in this complicated case could be mooted as soon as a single member or partner of a single Defendant realizes that he or she is non-diverse and moves to dismiss the action for lack of jurisdiction.

### III. Leave to Amend

The court has previously stated that it will not entertain any further motions to amend the

complaint. The court remains firm in this resolve. First and most importantly, the court made it clear to the Plaintiffs that the Sixth Amended Complaint was to be their final opportunity to make their best effort at pleading jurisdiction. Moreover, the court finds that further attempts at amending will not be beneficial to the parties in this case, nor are such attempts likely to move the parties past the motion to dismiss phase any time soon. For example, even if the Plaintiffs were to use this Order as a guide to amend their RICO claims, the court has only focused on one fatal flaw per subsection. The court took this route not as an indication that there were no other problems with the RICO claims, but because taking the time to fully evaluate every aspect of the RICO claims would have unnecessarily added time to these already drawn out proceedings. More attempts to plead RICO, then, would only lead to more motions to dismiss, and the court would be remiss not to fully consider those motions. Additionally, various Defendants have made various other motions, including motions to dismiss and motions to sever, that appear on their face to be worthy of serious consideration. Those motions will not be mooted by further efforts to successfully plead a RICO claim or diversity jurisdiction and will need to be resolved even if such efforts were successful.

By dismissing this case, the court does not mean to minimize the seriousness of the allegations made in the Sixth Amended Complaint. If those allegations are true, the Plaintiffs here were subjected to treatment that nobody deserves to suffer. But based on the allegations of the Sixth Amended Complaint, this court simply does not have the jurisdiction to hear this case.

## CONCLUSION AND ORDER

For the foregoing reasons, this action is DISMISSED for lack of subject matter jurisdiction. The case is therefore CLOSED. The parties shall bear their own fees and costs.

SO ORDERED this 2nd day of August, 2011.

                                        BY THE COURT:

                                        _____
                                        Clark Waddoups
                                        United States District Judge